IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>TERRINA CORDIE VIGIL,<br><br>    Debtor. | Case No. 25-10912 KHT<br><br>Chapter 7 |

**ORDER DENYING APPLICATION WITHOUT PREJUDICE**

THIS MATTER came before the Court on the *Application to Employ Wadsworth Garber Warner Conrardy, P.C. as Attorneys for Trustee* (the "Application," docket #17) filed by the Chapter 7 Trustee, Simon E. Rodriguez (the "Trustee"). The Court held a preliminary hearing on the matter (docket #31) and subsequently entered an Order to File Response (docket #42), to which Trustee filed a timely response (the "Response," docket #45). No party filed an objection to the Application or the Response, but the Court has an independent duty to review attorney employment and compensation terms. *See, e.g., Busy Beavers Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994); 11 U.S.C. § 105(a). The Court has reviewed the Application and the file, is advised in the premises, and hereby finds and concludes as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND.**

As set forth in the Application, Trustee's investigation into Debtor's financial affairs revealed the existence of potential avoidable transfers and/or recoverable assets. Trustee desires to employ the law firm of Wadsworth Garber Warner Conrardy, P.C. ("the "Firm") to investigate the transfers and recover property for the estate, including litigation of any claims arising out of the transfers and/or recoverable assets.

The Firm requests employment pursuant to a Contingent Fee Agreement attached to the Application as Exhibit A (the "Agreement"), which provides the Firm will receive thirty-three and one-third percent (33⅓%) of the gross amount recovered. In support of its assertion that contingent fee compensation is appropriate, the Response represents as follows:

- Trustee seeks to employ the Firm for the primary purpose of avoiding an automobile lien, recovering the lien for the benefit of the bankruptcy estate, and reducing the lienholder's interest to money.

- Contingent fee compensation is appropriate because of the unpredictability of the claims involved, examples of which include the following:

- o A lien may be properly perfected (and unavoidable by a trustee) when a records request from Colorado Department of Motor Vehicles initially indicated otherwise.
- o A debtor may fail to disclose that the vehicle in question has a co-owner or obligor, effectively reducing by one-half the amount of recovery for the bankruptcy estate.
- o The actual value of the vehicle in question dictates the value of the lien avoidance action. In many cases, the value of the vehicle in question is less than the value indicated by the debtor or by publicly available valuation methods such as NADA.
- o The lender whose lien is the subject of a trustee's avoidance action may force the selling dealer to "buy-back" an underlying loan based on a recourse provision in the dealer's financing agreement with the lender. Such dealer "buy-backs" result in more complex multi-party litigation.
- o A debtor may fail to cooperate with turnover obligations after a lien is avoided and recovered by a trustee, which results in the trustee's counsel initiating time-consuming turnover litigation.
- o A debtor may wish to "purchase" or "buy out" a lien after the lien is avoided and recovered by the trustee, resulting in trustee's counsel negotiating, drafting, and moving for approval of an agreement with the debtor.

- Beginning approximately fifteen years ago, the Trustee has exclusively employed the Firm on a contingent fee basis to pursue vehicle lien preference cases. The Trustee is aware of at least four other chapter 7 trustees (including Mr. Wadsworth in his capacity as a chapter 7 trustee) who employ counsel to pursue vehicle lien preference cases on a contingent fee basis, and have done so for at least fifteen years in hundreds of cases. It is thus "standard in the practice area" to employ counsel on a contingent fee basis to pursue vehicle lien preference cases. The standard exists, moreover, because it would be difficult to obtain adequate representation on an hourly basis, given the frequency with which these cases result in no recovery and no compensation.

Response ¶¶ 7-10. The Court does not find disputed issues of fact require a hearing. For purposes of the Application, the Court will assume the truth of the matters stated therein.[1]

## II.   APPLICABLE LAW.

Consideration of the Application requires analysis of multiple provisions of the Bankruptcy Code, including 11 U.S.C. §§ 327, 328, and 330.[2]

---

[1] Additionally, the Court has no reason to doubt the truth of the matters stated. The Court is familiar with Trustee and his counsel and their reputations of honesty and integrity.

[2] Further references to "section" are to those of the Bankruptcy Code, 11 U.S.C., unless otherwise indicated.

### A. Employment under § 327(a)

Section 327 provides for court review and approval of employment of counsel, as follows:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

### B. Employment Terms and Conditions under § 328(a)

Section 328(a) provides for court review of the terms and conditions of the employment of counsel, as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

### C. Compensation under § 330(a)

Section 330(a) provides for court review of the payment of compensation to counsel, as follows:

> (1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103–
>
>> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

    (B)    reimbursement for actual, necessary expenses.

(2)    The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3)    In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

    (A)    the time spent on such services;

    (B)    the rates charged for such services;

    (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)

    (A)    Except as provided in subparagraph (B), the court shall not allow compensation for–

        (i)    unnecessary duplication of services; or

        (ii)    services that were not–

            (I)    reasonably likely to benefit the debtor's estate; or

            (II)    necessary to the administration of the case.

    (B)    In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in

> connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(1)-(4). Section 330 thus sets two limits on professional compensation: the fees must be reasonable, and the fees must be based on actual, necessary services benefiting the estate.

Whether services are actual, necessary, and beneficial to the estate is a threshold inquiry. *In re Lederman Enters., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) ("[T]he beneficial nature of legal services must be determined before a reasonableness inquiry may even be conducted . . . ."). As the Supreme Court has made clear, "Section 330(a)(1) does not authorize courts to award 'reasonable compensation' *simpliciter*, but 'reasonable compensation for *actual, necessary services rendered by*' the § 327(a) professional." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 131 (2015) (emphasis in opinion). A court cannot approve compensation "'that is for the benefit of the professional and not the estate.'" *Id.* at 132 (quoting U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses, 78 Fed. Reg. 36250 (2013)).

Section 330 also requires a court to determine whether fees are reasonable. *In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1246 (10th Cir. 2013). In *Market Center East*, the Tenth Circuit Court of Appeals held bankruptcy courts must conduct a § 330 reasonableness review of all fee applications, and that reasonableness review must include the lodestar factors set forth in § 330(a)(3) plus the "additional relevant factors" set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974), as follows:

(1) The time and labor required.
(2) The novelty and difficulty of the questions.
(3) The skill requisite to perform the legal service properly.
(4) The preclusion of other employment by the attorney due to acceptance of the case.
(5) The customary fee.
(6) Whether the fee is fixed or contingent.
(7) Time limitations imposed by the client or the circumstances.
(8) The amount involved and the results obtained.
(9) The experience, reputation, and ability of the attorneys.
(10) The "undesirability" of the case.
(11) The nature and length of the professional relationship with the client.
(12) Awards in similar cases.

*Market Center East*, 730 F.3d at 1247.

### D. Reasonableness Standard

Sections 328 and 330 provide for reasonableness determination at different points in time: reasonableness under § 328 is generally determined prospectively, before

substantial work on the matter has begun, while reasonableness under § 330 is generally determined retrospectively, after substantial work on the matter has been concluded. But, the different points in time do not require different analyses of what constitutes reasonable compensation. The use of the term "reasonable" in both sections is "instructive" because "[i]t is well established that identical words used in different parts of the same act are intended to have the same meaning." *In re Federal Mogul-Global, Inc.*, 348 F.3d 390, 407-08 (3rd Cir. 2003) (quoting *Barnhart v. Walton*, 535 U.S. 212, 221 (2002)) (further quotation omitted). The factors for reasonableness set forth in § 330 are therefore appropriately considered in determining reasonableness of compensation terms and conditions under § 328. *Id.*

Under § 328, a court must determine whether the proposed terms and conditions of employment are likely to yield compensation that is reasonable when judged by the factors set forth in § 330. *See, e.g., In re NBI, Inc.*, 129 B.R. 212, 219-20 (Bankr. D. Colo. 1991) ("The court must be persuaded that the terms and conditions of employment are in the interest of the estate. The decision is a matter of discretion and is made against the background of the statutory compensation scheme of sections 330 and 331 . . . .") (quoting *In re C & P Auto Transport, Inc.*, 94 B.R. 682, at 686 (Bankr. E.D. Calif. 1988)). The moving party bears the burden of showing reasonableness. *Id.*

With those standards in mind, the Court turns to the issues of contingent fee compensation in general, and the Application in particular.

### III. DISCUSSION.

The Court considers the general nature of contingent fee compensation, the Court's duty to review all compensation for reasonableness, and the particulars of the Application in this case, as set forth below.

#### A. Contingent Fees Generally

For context, the Court first considers the general nature of contingent fee compensation, as described by another court:

> The hourly fee is the standard price structure in the legal profession. (*See* Schwartz & Mitchell, *An Economic Analysis of the Contingent Fee in Personal-Injury Litigation* (1970) 22 Stan. L. Rev. 1125.) Where a lawyer normally charges for work on the basis of an hourly fee, it is a fairly simple matter to calculate the reasonable value of services rendered even in the absence of a negotiated fee. The lawyer's customary hourly rate can be evaluated by comparison to the rate charged by others in the legal community with similar experience. The number of hours expended by the lawyer can also be evaluated in light of how long it would have taken other attorneys to perform the same tasks. Properly evaluated and adjusted, the product of the hourly rate and the number of hours expended should yield the reasonable value of the work completed.

> Where a lawyer has contracted to provide services in exchange for a contingent percentage fee, calculation of the reasonable value of services rendered . . . becomes a more complicated task. It has been repeatedly recognized that a contingent fee "'may properly provide for a larger compensation than would otherwise be reasonable.'" (*Rader v. Thrasher* (1962) 57 Cal.2d 244, 253, 18 Cal. Rptr. 736, 368 P.2d 360, quoting *Estate of Raphael* (1951) 103 Cal.App.2d 792, 796, 230 P.2d 436; accord *Sincock v. Obara* (D. Del. 1970) 320 F.Supp. 1098, 1102, fn. 8.) This is because a contingent fee involves economic considerations separate and apart from the attorney's work on the case.
>
> In addition to compensation for the legal services rendered, there is the *raison d'etre* for the contingent fee: the contingency. The lawyer on a contingent fee contract receives nothing unless the plaintiff obtains a recovery. Thus, in theory, a contingent fee in a case with a 50 percent chance of success should be twice the amount of a non-contingent fee for the same case. Usually, the fee is contingent not only on the ultimate success of the case but also on the amount recovered; that is, the fee is measured as a percentage of the total recovery. Thus, the lawyer runs the risk that even if successful, the amount recovered will yield a percentage fee which does not provide adequate compensation. (*See* Schwartz & Mitchell, *op. cit. supra*, 22 Stan. L. Rev. at p. 1125.)

*Cazares v. Saenz*, 208 Cal. App. 3d 279, 287-88 (1989).

Although it may be more complicated to review contingent fee compensation for reasonableness, especially in hindsight, courts are nevertheless obligated to conduct a reasonableness review, even outside of bankruptcy. As the Colorado Court of Appeals held:

> [The Law Firm] contends that the trial court erred in evaluating the enforceability of the fee agreement when it considered factors relating to risk and difficulty of work in retrospect, rather than as they appeared at the outset of the case. According to [The Law Firm], courts and commentators have taken two general approaches to determining the validity of contingent fee contracts, that is, (1) determining whether the contingent fee contract was freely and fairly made in accord with ordinary contract law; or (2) determining whether a legitimate risk of nonrecovery existed at the outset to justify the contingent fee.
>
> We reject the first approach because, under Colorado law, contingent fee agreements are not "ordinary" contracts. The Colorado Supreme Court has noted that there are "special considerations inherent in the attorney-client contractual relationship" that "distinguish[ ] the attorney-client relationship from other business relationships." *Dudding*, 11 P.3d at 445. Consequently, "[u]nder its general supervisory power over attorneys as officers of the court, a court may and should scrutinize contingent fee

contracts and determine the reasonableness of their terms," apart from whether the contracts were fairly and freely entered into. *People v. Nutt*, 696 P.2d 242, 248 (Colo. 1984); *see* Restatement (Third) of the Law Governing Lawyers § 34 cmt. b (2000) (Restatement of Lawyering) ("A client-lawyer fee arrangement will be set aside when its provisions are unreasonable as to the client. . . . Lawyers . . . owe their clients greater duties than are owed under the general law of contracts."); 23 Richard A. Lord, Williston on Contracts § 62:4, at 295-97 (4th ed. 2002) ("Due to the special nature of a contingent fee contract, which gives an attorney an interest in the outcome of the litigation and is most susceptible to improper influence and duress, the courts will closely review them. In particular, they will scrutinize the agreement for reasonableness, paying special attention to the reasonableness of the fee.").

With respect to the second approach, [The Law Firm] asserts that "enforceability of a contingent fee agreement is not determined by a post-hoc analysis of the value of the services rendered, but rather by reference to whether the contract was fairly entered into and reflects the risk of litigation as it appeared at the time the contract was made." Such a position, [The Law Firm] says, "accords with public policy" because it "encourages contracts that permit a client without resources to seek redress" while recognizing that "attorneys must be compensated for bearing the risk that resources may be expended without any return."

We readily acknowledge that "[t]he whole point of contingent fees is to remove from the client's shoulders the risk of being out-of-pocket for attorney's fees upon a zero recovery. Instead, the lawyer assumes the risk, and is compensated for it by charging what is (in retrospect) a premium rate." 1 Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering § 8.6, 8-15 (3d ed. 2010); *see also Brody v. Hellman*, 167 P.3d 192, 201 (Colo. App. 2007) ("The size of the contingent fee is designed to be greater than the reasonable value of the services, or the hours worked multiplied by the hourly rate, to reflect the fact that attorneys will realize no return for their investment of time and expenses in cases they lose."); Restatement of Lawyering § 35 cmt. c ("[a] contingent fee may permissibly be greater than what an hourly fee lawyer of similar qualifications would receive for the same representation," because "[a] contingent-fee lawyer bears the risk of receiving no pay if the client loses and is entitled to compensation for bearing that risk").

However, that does not mean that the reasonableness of a contingent fee agreement is assessed only in light of the circumstances existing at the time the agreement was entered into. Our cases recognize that, "[w]hen reviewing contingency fee agreements for reasonableness under their inherent powers, [our courts] have tested the contracts against the quantum meruit standard," *In re Marriage of Redmond*, 131 P.3d 1167, 1170 (Colo. App. 2005), and determined whether the "services to be

8

performed were reasonably worth the amount stated in the agreement," by considering the "amount of time spent, the novelty of the questions of law, and the risk of non-recovery to the client and attorney." *Nutt*, 696 P.2d at 248.

*Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570-71 (Colo. Ct. App. 2010), as modified on denial of reh'g (Sept. 23, 2010). The lodestar analysis applied by the Colorado courts is consistent with that required of this Court by § 330 and *Johnson*.

The lodestar and *Johnson* factors are applied in reasonableness review of contingent fee compensation in other contexts as well. In *Chieftain Royalty Co. v. EnerVest Energy Institutional Fund XII-A, L.P.*, 166 F.4th 34 (10th Cir. 2026) (applying Oklahoma common fund class action law), the Tenth Circuit Court of Appeals described the use of lodestar and *Johnson* factors as a "cross-check" of the reasonableness of the contingent fee award at issue. *Id.* at 40-42.

### B. Bankruptcy Court Duty to Conduct Reasonableness Review

While contingent fee compensation is appropriately subject to reasonableness review in any court, bankruptcy courts have a specific statutory duty to review compensation of professionals for reasonableness, considering the factors set forth in § 330.

Some courts have held when contingent fee compensation is approved "under § 328," a court may not later review the fees for reasonableness under § 330. *See, e.g., In re Airspect Air, Inc.*, 288 B.R. 464 (6th Cir. BAP 2003) (holding the bankruptcy court could not review fees for reasonableness under § 330 because it had pre-approved employment under § 328(a)), *rev'd*, 385 F.3d 915, 922 (6th Cir. 2004) (holding the bankruptcy court had not pre-approved compensation under § 328(a), considering the totality of the circumstances, including "whether the [application or motion] specifically requested fee pre-approval, whether the court's order assessed the reasonableness of the fee, and whether either the order or the motion expressly invoked § 328."). This Court cannot agree, for two reasons: (1) the plain language of §§ 328 and 330, and (2) Tenth Circuit precedent.

#### 1. Plain language of §§ 328 and 330

First, the Court cannot find the plain language of the Bankruptcy Code supports a distinction between contingent fee employment or compensation "under § 328" and other methods of employment or compensation, such as hourly rates. All employment is approved under § 327. All compensation is approved under § 328. The first sentence of § 328(a) sets forth examples of different forms of compensation, including hourly rates, contingent fees, and fixed fees. It does not set any one form of compensation apart for separate treatment. Thus, there should be no special significance given to applications that cite or reference § 328 or § 328(a). And, the plain language of § 330 requires a court to review all fees for reasonableness, according to specific factors set forth, including the lodestar factors (the number of hours reasonably spent, multiplied by a reasonable hourly

rate). Section 330 does not exempt a particular type of compensation from review. To be sure, § 330(a) states a court's reasonableness review is "subject to sections 326, 328, and 329." But, stating a court's review is "subject to" § 328 is not the same as saying the court's review applies only to hourly fees approved under § 328. Because all compensation is subject to § 328, finding § 330 inapplicable to compensation approved under § 328 would mean § 330 analysis would never apply – the exception would swallow the rule.

In the Court's view, § 330's incorporation by reference of § 328 is best interpreted as incorporating the provision of § 328 that "the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." § 328(a). Courts have found this language prohibits a court from changing a manner of compensation from one type to another (such as from contingency fee to hourly rate) after the fact, unless un-anticipatable developments occur between the approval of the compensation type and the conclusion of the employment. *See, e.g., In re Reimers*, 972 F.2d 1127, 1128 (9th Cir. 1992).

The Court does not disagree with that premise. But, the Court puts a finer point on it: there is a distinction between changing a manner of compensation, which may be limited by § 328, and reviewing compensation for reasonableness, which is required by § 330. A bankruptcy court has the power and duty to conduct reasonableness review using the factors set forth in § 330, which include a lodestar analysis. Using a lodestar analysis as one of many factors, given a weight appropriate to the facts of the case, in determining the reasonableness of contingent fee compensation is not the same as converting compensation from a contingent fee basis to an hourly fee basis. Declining to apply one or more factors set forth in § 330 to contingent fee compensation results in an abdication of the Court's responsibility to review the reasonableness of all compensation. This abdication is not supported by the plain language of §§ 328 and 330.

### 2.     **Tenth Circuit Precedent**

Second, Tenth Circuit precedent requires this Court to review all compensation under § 330, regardless of the method of compensation. *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239 (10th Cir. 2013). In *Market Center East*, the debtor owned a shopping center. Pre-petition, home improvement retailer Lowe's signed a contract to purchase the shopping center property, but Lowe's later declined to proceed with the purchase. The debtor retained an attorney to sue Lowe's for breach of contract. The debtor and the attorney negotiated a hybrid agreement providing for compensation of $200 per hour plus a contingency fee of 15% of any sums recovered in damages or the purchase price of the shopping center. At the time, the parties expected the value of the case to be $200,000. But, after the attorney filed the lawsuit, Lowe's made a settlement offer to purchase the shopping center for $7,500,000.

Shortly after Lowe's made its settlement offer, the debtor filed a Chapter 11 bankruptcy petition. During the bankruptcy case, the debtor and Lowe's reached a

settlement pursuant to which Lowe's purchased the property for $9,750,000. When the attorney sought payment of his fee, including the contingency fee, the debtor and creditors objected. The bankruptcy court found the attorney should be awarded a 15% contingent fee based on the sale price increase of $2,250,000, not the full $9,750,000. With the $200 hourly rate and 15% of $2,250,000, the bankruptcy court awarded the attorney $350,752.06, which represented an approximate hourly rate of $8,632.25.

The debtor appealed to the Tenth Circuit Bankruptcy Appellate Panel, which affirmed the bankruptcy court's decision, and then appealed to the Tenth Circuit Court of Appeals, which reversed. *See In re Market Center East Retail Property, Inc.*, 469 B.R. 44 (10th Cir. BAP 2012), *rev'd*, 730 F.3d 1239 (10th Cir. 2013).

The *Market Center East* debtor asked the Court of Appeals to hold the case of *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542 (2010), limited courts' ability to consider anything other than the lodestar factors when determining reasonable compensation. *Market Center East*, 730 F.3d at 1247-49. The Court of Appeals distinguished *Purdue* and held its limitations did not apply to fees awarded under § 330. *Id.* "Instead, we hold that in determining reasonable attorney's fees pursuant to § 330, the lodestar amount may be enhanced or adjusted downward based on the § 330 factors and the *Johnson* factors." *Id.*

After confirming the applicability of the lodestar and *Johnson* factors to § 330 analysis, the Court of Appeals reversed the bankruptcy court, which had held it was not required to consider the lodestar factors when determining the reasonableness of counsel's compensation. As the Court of Appeals stated:

> Although we hold that the bankruptcy court must consider the § 330(a)(3) and *Johnson* factors in evaluating whether a proposed fee amount is reasonable, this question is distinct from what compensation structures are permitted. Section 330(a) does not mandate any particular fee arrangement. As we have previously noted, a bankruptcy court has "wide discretion" to authorize many types of fee arrangements – provided the total fee is reasonable when considered against the relevant factors.

> The bankruptcy court determined that a portion of attorney's fee owed to [the attorney] was to be calculated based on a contingency basis, namely that [the attorney] is entitled to 15% of $2.25 million. The bankruptcy court reasoned that the allowance of contingency fees in § 328(a) "make it obvious that the lodestar methodology is not the only permitted compensation arrangement for attorneys." *In re Market Center I* [the Bankruptcy Court decision], 448 B.R. at 61. The bankruptcy court then concluded that "it is not clear . . . that the default position for compensation must be the lodestar in the absence of a specific agreement otherwise." *Id.* The BAP affirmed the bankruptcy court's holding and emphasized "the cumulative effect" of § 328 and § 330. *In re Market Center II* [the BAP decision], 469 B.R. at 54.

11

> We have recognized that "bankruptcy courts have wide discretion in awarding compensation to attorneys, trustees, and professionals so long as it is reasonable." *In re Commercial Fin. Servs.*, 427 F.3d at 810. The bankruptcy court must nonetheless properly consider the § 330(a)(3) and *Johnson* factors in evaluating whether the compensation is reasonable. Thus, the bankruptcy court erred in holding that it had discretion to ignore any of the § 330(a)(3) factors. *In re Market Center I*, 448 B.R. at 62. A bankruptcy court has discretion in determining how much weight to assign each factor and in determining the reasonableness of a fee, but this discretion does not extend to disregarding factors prescribed by statute. Section 330 and our case law instruct bankruptcy courts to consider the § 330(a)(3) factors as well as relevant *Johnson* factors.
>
> Further, the bankruptcy court erred in holding that "Section 330(a)(3) includes a nonexclusive list of factors that a court *may (or may not) consider*." *Id*. at 63-64 (emphasis added). We held in *In re Commercial Fin. Servs.* that bankruptcy courts must consider the § 330(a)(3) factors in awarding reasonable attorney's fees. 427 F.3d at 811 ("[U]nder 11 U.S.C. § 330(a)(3), a bankruptcy court is *directed* to consider at least five factors, among which four either explicitly or implicitly direct a bankruptcy court to examine the amount of time spent on a project.") (emphasis added). Accordingly, we conclude that the bankruptcy court erred as a matter of law in interpreting 11 U.S.C. § 330.

*Id.* at 1249-51.

Finally, *Market Center East* cited and quoted *In re Commercial Financial Services, Inc.*, 427 F.3d 804 (2005), in which a financial advisor requested approval of payment of fees on a fixed, monthly basis. The bankruptcy court approved the financial advisor's employment but also required it to keep time records to facilitate the court's reasonableness review. On appeal, the financial advisor argued the § 330 factors were irrelevant because it had requested employment on a fixed monthly fee. The Court of Appeals disagreed, finding the bankruptcy court properly considered the reasonableness of the financial advisor's compensation under the lodestar and other factors set forth in § 330 and *Johnson*. *Id.* at 810-11.

Thus, the Tenth Circuit Court of Appeals has not held compensation approved "under § 328" is insulated from reasonableness review under § 330. Under *Commercial Financial Services* and *Market Center East*, regardless of the type of compensation – hourly, contingent, fixed, or otherwise – this Court must determine the reasonableness of that compensation under § 330, using the factors set forth in that section and in *Johnson*. The Court may not exclude any of the § 330 factors from its reasonableness analysis. Specifically, the Court must consider the lodestar factors when determining the reasonableness of compensation that includes a contingent fee component. The Court's consideration of the lodestar factors as one element of its reasonableness review does not convert the fee structure from contingent fee compensation to hourly fee

compensation. Contingent fee compensation is allowed, "provided the total fee is reasonable when considered against the relevant factors." *Id.* at 1249.

### C. The Agreement in this Case

Section 328 allows the Court to approve contingent fee compensation, if that form of compensation is reasonable in the particular case. The determination of reasonableness is a matter within this Court's discretion. *See, e.g., In re NBI, Inc.*, 129 B.R. at 222 ("Inclusion of the term 'retainer' in Section 328(a) of the Bankruptcy Code does not by definition qualify all retainer arrangements as reasonable. The Court, in its discretion, must make this determination."). Given the Court's obligation to review all compensation for reasonableness under the factors set forth in § 330 and *Johnson*, the Court will approve contingent fee compensation under § 328 only if an applicant makes a sufficient showing contingent fee compensation is justified in the particular case and is likely to produce reasonable compensation for actual, necessary services rendered.

The Court thus turns to the Agreement in this case, which provides the Firm will receive thirty-three and one-third percent (33⅓%) of the total recovery by the estate in connection with the claims. The Court must determine whether the Application and Response have sufficiently shown grounds for awarding a contingent fee.

In support of its assertion contingent fee compensation is appropriate, the Response argues vehicle lien avoidance actions are unpredictable. Department of Motor Vehicles records may be inaccurate, the vehicle may have a non-debtor co-owner, the value of the vehicle may be low (and specifically may be lower than anticipated by reference to valuation methods such as the NADA), the lender may force a buy-back leading to complex litigation, a debtor may fail to cooperate with a turnover order, and a debtor may wish to buy the vehicle back. The Court acknowledges litigation can be unpredictable, although the Court is not convinced vehicle lien avoidance actions are more unpredictable than other avoidance actions or other types of bankruptcy court litigation. The Court is not without concern for the Firm in particular, and bankruptcy counsel in general, who have performed work that was not compensated because a case was not successful, on the merits of the case and/or in collection efforts. But, in every no-asset case, no funds are available for payment to attorneys. A factor present in every case cannot, by itself, justify higher compensation in any one case.

The Court further notes the litigation in this case was resolved through settlement (see docket ##37, 41), which reduced or eliminated some of the possible uncertainties asserted in the Response. The Court does not have the Firm's time entries before it and thus has not been able to compare the time spent on this matter to the amount recovered.[3]

---

[3] In the Response, the Firm agreed to keep time records to facilitate this Court's reasonableness review of its contingent fee. The Court acknowledges it could approve the contingent fee with an order clarifying any fee must be reasonable when compared to the § 330 and *Johnson* factors, which was the approach adopted in *Commercial Financial Services*, 427 F.3d at 810-13. But, given the uncertainty that may result in that approach, and given the lack of sufficient justification for a contingent fee in this case, the Court applies Occam's razor to deny contingent fee compensation at the outset.

In the Court's experience, when counsel have sought contingent fee compensation and the Court has compared the contingent fee sought to the lodestar factors, the contingent fee compensation has been higher.[4]

The primary justification for contingent fee compensation, as recognized in the *Cazares v. Saenz* discussed above, is that an attorney is entitled to a higher fee in some cases to compensate for other cases in which the attorney has been unsuccessful. That view is well accepted outside of a bankruptcy context. *See, e.g., Cazares v. Saenz*, 208 Cal. App. 3d at 287-88. But, in a bankruptcy case, the Court is constrained by § 330 to award only reasonable compensation for actual, necessary services that benefit the estate for which the work is performed. Awarding a higher fee in "successful" cases to compensate an attorney for "unsuccessful" cases does not provide a benefit to the estate of the successful cases. In fact, subsidizing the unsuccessful cases penalizes the creditors (or debtors, if the estate is solvent) in the successful cases. The Court cannot approve compensation that benefits only the professional and not the estate. ASARCO, 576 U.S. at 131. And, as the Supreme Court held, policy or fairness arguments cannot outweigh the plain language of § 330:

> [We] lack the authority to rewrite the statute even if we believed that uncompensated . . . litigation would fall particularly hard on the bankruptcy bar. "Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding," and that is no less true in bankruptcy than it is elsewhere. *Lamie v. United States Trustee*, 540 U.S. 526, 538, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Whether or not the [justification for compensation] is desirable as a matter of policy, Congress has not granted us "roving authority . . . to allow counsel fees . . . whenever [we] might deem them warranted." *Alyeska Pipeline*, *supra*, at 260, 95 S.Ct. 1612. Our job is to follow the text even if doing so will supposedly "undercut a basic objective of the statute," *post*, at 2170.

*Id.* at 134-35.

The Court is mindful it has "'wide discretion in awarding compensation to attorneys . . . so long as it is reasonable.'" *Market Center East*, 730 F.3d at 1250 (quoting *In re Commercial Fin. Servs.*, 427 F.3d at 810). Here, on the undisputed facts before it, the Court cannot find the Application and Response have sufficiently shown contingent fee compensation is justified in the particular case and is likely to produce reasonable compensation for actual, necessary services rendered. The Court will therefore deny the Application, without prejudice to the filing of an application providing for compensation on an hourly fee basis.

---

[4] In one recent case in particular, the lodestar calculation supported an award of $10,440 in fees, but the contingent fee calculation supported an award of $21,775.62 in fees. Certainly, each case is different, and reasonableness of compensation must be determined on a case-by-case basis. But, that case and others recently before the Court support the Court's view contingent fee compensation can and does result in a fee that substantially exceeds hourly-rate compensation.

## IV. CONCLUSION.

For the reasons discussed above, the Court cannot find the Application and Response have sufficiently shown contingent fee compensation is justified in the particular case and is likely to produce reasonable compensation for actual, necessary services rendered.

Accordingly, it is

HEREBY ORDERED that the Application is DENIED, without prejudice to the filing of an application providing for compensation on an hourly fee basis, which may seek approval of employment as of the date the original Application was filed, *nunc pro tunc*.

Dated: March 10, 2026                BY THE COURT:

*Kimberley H Ty—*
_____
Kimberley H. Tyson, Judge
United States Bankruptcy Court